# UNITED STATES DISTRICT COURT
for the
Eastern District of California

**FILED**
FEB 0 1 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

In the Matter of the Search of )
)
USPS Priority Mail Parcel affixed with tracking number )
9505 5152 6776 9029 4819 42 addressed to "Kiana )
Parsons 1643 S. Throop St. Apt 2F Chicago, IL 60608" )
with a return address of "Kristen Martin 343 Sawtell )
Rd. Roseville, CA 95678". )

Case No.
2:19-SW-0076 KJN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution, and Possession with Intent to Distribute, a Controlled Substance |
| 21 U.S.C. § 843(b) | Illegal Use of the Mails in Furtherance of Narcotic Trafficking |
| 21 U.S.C. § 846 | Attempt and Conspiracy to Commit the Foregoing Offenses |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ R. [signature]
Applicant's signature

Trevor R. Covert, United States Postal Inspector
Printed name and title

Sworn to before me and signed in my presence.
Date: Feb 1, 2019

City and state: Sacramento, California

[signature]
Judge's signature

Kendall J. Newman, U.S. Magistrate Judge
Printed name and title

## Affidavit of Postal Inspector Trevor R. Covert

I, Trevor R. Covert, being duly sworn, hereby depose and state:

### Purpose

1. This Affidavit is made in support of a search warrant for the United States Postal Service ("USPS") Priority Mail Parcel 9505 5152 6776 9029 4819 42 addressed to "Kiana Parsons 1643 S. Throop St. Apt 2F Chicago, IL 60608" (hereinafter referred to as "**THE PARCEL**").

2. **THE PARCEL** is in the temporary custody of the United States Postal Inspection Service ("USPIS") and is described more particularly in Attachment A, which is attached hereto and fully incorporated herein.

3. Based on the information provided in this affidavit, I believe there is probable cause that **THE PARCEL** contains evidence, fruits, proceeds, or instrumentalities of violations of 21 U.S.C. § 841(a)(1) (distribution, and possession with intent to distribute, a controlled substance), 21 U.S.C. § 843(b) (illegal use of the mails in furtherance of narcotic trafficking), and 21 U.S.C. § 846 (attempt and conspiracy to commit the foregoing offenses). The evidence, fruits, and instrumentalities to be searched for and seized are more fully described in Attachment B, which is attached hereto and incorporated fully herein.

### Agent Background

4. I have been a Postal Inspector since April 2012. I am currently assigned to the Sacramento Domicile, San Francisco Division, of the United States Postal Inspection Service. My current assignment is to investigate the unlawful transportation of contraband, including controlled substances and proceeds of the sale of controlled substances, through the United States Mail.

5. I attended the United States Postal Inspection Service Basic Inspector Training in Potomac, Maryland. I also completed a forty-hour Prohibited Mailings Narcotics training with the United States Postal Inspection Service. Through my training, experience, and interaction with other experienced Postal Inspectors, Task Force Officers, and other drug investigators, I have become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport, and distribute drugs; to collect and conceal drug-related proceeds; and to communicate with other participants to accomplish such objectives. I have received specialized training in narcotics investigation matters including, but not limited to, drug interdiction, drug detection, and money laundering techniques and schemes.

1

6. I have participated in at least thirty investigations targeting individuals and organizations trafficking heroin, cocaine, marijuana, methamphetamine, and other controlled substances. During the course of these investigations, I have become familiar with the manner in which drug traffickers use the mail to conduct their illegal operations. I have written at least one hundred search warrants related to parcel interdiction efforts.

7. I am a "Federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.

8. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

A. **TECHNICAL BACKGROUND**

9. Digital currency (also known as crypto-currency) is generally defined as an electronic-sourced unit of value that can be used as a substitute for fiat currency (i.e. currency created and regulated by a government.) Digital currency exists entirely on the Internet and is not stored in any physical form. Digital currency is not issued by any government, bank, or company and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Digital currency is not illegal in the United States and may be used for legitimate financial transactions. However, digital currency is often used for conducting illegal transactions, such as the sale of controlled substances.

10. Bitcoin is a type of digital currency. Bitcoin payments are recorded in a public ledger that is maintained by peer-to-peer verification and is thus not maintained by a single administrator or entity. Individuals can acquire Bitcoins either by "mining" or by purchasing Bitcoins from other individuals. An individual can "mine" for Bitcoins by allowing his/her computing power to verify and record the Bitcoin payments into a public ledger. Individuals are rewarded for this by being given newly created Bitcoins. On January 30, 2019, one Bitcoin is equal to approximately $3,440.70 USD.

11. An individual can send and receive Bitcoins through peer-to-peer digital transactions or by using a third-party broker. Such transactions can be done on any type of computer, including laptop computers and smart phones.

12. Bitcoins can be stored in digital "wallets." A digital wallet essentially stores the access code that allows an individual to conduct Bitcoin transactions on the public ledger. To access Bitcoins on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key.") The public address can be analogized to an account number while the private key is like the password to access that account.

13. Even though the public addresses of those engaging in Bitcoin transactions are recorded on the public ledger, the true identities of the individuals or entities behind the public addresses are not recorded. If, however, a real individual or entity is linked to a public address, it would be possible to determine what transactions were conducted by that individual or entity. Bitcoin transactions are, therefore, described as "pseudonymous," meaning they are partially anonymous.

14. Through the dark web or darknet, i.e. websites accessible only through encrypted means, individuals have established online marketplaces, such as the Silk Road, for narcotics and other illegal items. These markets often only accept payment through digital currencies, such as Bitcoin. Accordingly, a large amount of Bitcoin sales or purchases by an individual is often an indicator that the individual is involved in narcotics trafficking or the distribution of other illegal items. Individuals intending to purchase illegal items on Silk Road-like websites need to purchase or barter for Bitcoins. Further, individuals who have received Bitcoin as proceeds of illegal sales on Silk Road-like websites need to sell their Bitcoin to convert them to fiat (government-backed) currency. Such purchases and sales are often facilitated by peer-to-peer Bitcoin exchangers who advertise their services on websites designed to facilitate such transactions.

15. Dark web sites, such as Silk Road, AlphaBay, Wall Street, and Dream, operate on "The Onion Router" or "TOR" network. The TOR network ("TOR") is a special network of computers on the Internet, distributed around the world, that is designed to conceal the true Internet Protocol ("IP") addresses of the computers accessing the network, and, thereby, the locations and identities of the network's users. TOR likewise enables websites to operate on the network in a way that conceals the true IP addresses of the computer servers hosting the websites, which are referred to as "hidden services" on the TOR network. Such "hidden services" operating on TOR have complex web addresses, which are many times generated by a computer algorithm, ending in ".onion" and can only be accessed through specific web browser software designed to access the TOR network.

<b><u>STATEMENT OF PROBABLE CAUSE</u></b>

**B.** <u>**Summary of the Investigation**</u>

16. I am part of the Northern California Illicit Digital Economy (NCIDE) task force of Homeland Security Investigations ("HSI"), the Federal Bureau of Investigation ("FBI"), the Drug Enforcement Administration ("DEA") and the United States Postal Inspection Service ("USPIS"). As a function of this task force, investigators regularly purchase narcotics utilizing both digital and fiat currencies, from the persons operating and illegally selling narcotics on the "clear" portion of the internet, from the "dark" portion of the internet and from various social media platforms. Investigators conduct the undercover purchases of narcotics to assist in the effort to identify the suspects operating such illicit sites.

17. On or about July 01, 2018, the NCIDE task force opened a joint investigation of DankStix ("DANKSTIX") a Dream Market based vendor involved in shipping controlled substances via the USPS.

18. DANKSTIX joined the Dream marketplace on October 09, 2017 and offers marijuana products in various forms to include cartridges, wax, THC powder, "terpene sauce," pre-rolled weed cigars, and marijuana buds up to pound quantities. As of January 10, 2019, DANKSTIX has 1050 reviews with a rating of 4.88 out of 5 stars.

19. DANKSTIX regularly posts on the Dread dark web forums and allows direct deals through the Wickr encrypted chat application. During the course of this investigation, case agents have placed orders from DANKSTIX on the Dream marketplace as well as through Wickr.

20. On July 03, 2018, law enforcement placed an order with DANKSTIX on the Dream Market to purchase a half pound of marijuana. The undercover buy was conducted using Bitcoin as payment. On July 07, 2018, law enforcement received the undercover purchase via the USPS mail. Once opened, law enforcement discovered the parcel contained a mylar bag. Inside the mylar bag, was a clear, vacuum sealed, food-saver style plastic bag which contained suspected marijuana. The weight of the marijuana, including the plastic bag, was determined to be 240 grams.

21. On September 25, 2018, law enforcement placed an order with DANKSTIX on the Dream Market to purchase a half pound of marijuana. The undercover buy was conducted using Bitcoin as payment. On September 28, 2018, law enforcement received the undercover purchase via the USPS mail. Once opened, law enforcement discovered the parcel contained a mylar bag. Inside the mylar bag, was a clear, vacuum sealed, food-saver style plastic bag which contained suspected marijuana. The weight of the marijuana, including the plastic bag, was determined to be 264 grams.

22. On October 29, 2018, law enforcement placed an order with DANKSTIX through Wickr to negotiate a direct deal purchase of marijuana. The undercover buy was conducted using Bitcoin as payment. On November 2, 2018, law enforcement received the undercover purchase via the USPS mail. Once opened, law enforcement discovered the parcel contained a mylar bag. Inside the mylar bag, was a clear, vacuum sealed, food-saver style plastic bag which contained suspected marijuana. The weight of the marijuana, including the plastic bag, was determined to be 300 grams.

23. On November 10, 2018, law enforcement placed an order with DANKSTIX on the Dream Market to purchase a quarter pound of marijuana. The undercover buy was conducted using Bitcoin as payment. On November 16, 2018, law enforcement received the undercover purchase via the USPS mail. Once opened, law enforcement discovered the parcel contained a mylar bag. Inside the mylar bag, was a clear, vacuum sealed, food-saver style plastic bag which contained suspected marijuana. The weight of the marijuana, including the plastic bag, was determined to be 131 grams.

24. Through United States Postal Inspection Service tools and analysis, law enforcement identified Xavier Alexander SPEROPOULOS ("SPEROPOULOS") as operating the DANKSTIX vendor account. Law enforcement has also identified his co-habitant, Lauren CROWE ("CROWE") as placing parcels containing marijuana into the USPS mail system.

25. On December 04, 2018, law enforcement conducted an electronic check of USPS records and databases and identified a parcel ("DECEMBER PARCEL") which was shipped out of Lincoln, CA, on December 03, 2018. During the records checks, law enforcement noticed several anomalies that, based on their training and experience, are characteristics of parcels containing controlled substances and/or proceeds of narcotics trafficking.

26. On December 04, 2018, law enforcement reviewed the surveillance video at the Lincoln post office located at 200 Gateway Drive, Lincoln, CA 95648 and determined SPEROPOULOS mailed the DECEMBER PARCEL.

27. On December 12, 2018, law enforcement secured a federal search warrant (2:18-SW-1009-AC) to open the DECEMBER PARCEL and examine its contents. Later that day, law enforcement executed the search warrant on the DECEMBER PARCEL. Once opened, law enforcement discovered the parcel contained a mylar bag. Inside the mylar bag, was a clear, vacuum sealed, food-saver style plastic bag which contained suspected concentrated marijuana/THC. The weight of the marijuana, including the plastic bag, was determined to be 10 grams.

28. On January 02, 2019, law enforcement conducted surveillance at the Lincoln post office, located at 200 Gateway Drive, Lincoln, CA 95648. At approximately 12:35 p.m., law enforcement observed CROWE arrive at the Lincoln post office in a 2012, Grey in color, Hyundai Sonata, bearing California license plate 6VOB671 (SUBJECT VEHICLE). At approximately 12:36 p.m., CROWE is observed exiting SUBJECT VEHICLE carrying a white USPS postal tub and entering the Lincoln post office. CROWE exits the post office a short time later carrying a white postal tub. CROWE then gets into SUBJECT VEHICLE and drives to the blue collection box positioned in front of the post office. CROWE deposits three parcels into the blue collection box and exits the facility.

29. US Postal Inspectors immediately retrieved all the parcels mailed by CROWE and photographed them. CROWE mailed a total of eight parcels. Five parcels were mailed from inside the post office lobby drop box which all had the same return address "CECILIA M GROVE 177 I ST LINCOLN CA 95648-1728" and going to destinations I know to be regions where drugs are often shipped from California (New York, North Carolina, Kentucky and Ohio). Three parcels were deposited into the blue collection box which all had the same return address "EMILY LEWIS 6222 LONETREE BLVD ROCKLIN CA 95765-3790" and going to destinations I know to be regions where drugs are often shipped from California (Arkansas, South Carolina and Washington D.C.). When handling the parcels dropped off by CROWE, many of the parcels had a strong odor of marijuana emanating from their contents. Out of the eight parcels mailed by CROWE, law enforcement detained one parcel ("JANUARY PARCEL") for further investigation and placed the remaining seven parcels back into the USPS mail stream.

30. On January 04, 2018, law enforcement secured a federal search warrant (2:19-SW-0046-EFB) to open the JANUARY PARCEL and examine its contents. Later that day, law enforcement executed the search warrant on the JANUARY PARCEL. Once opened, law enforcement discovered the parcel contained two mylar bags. Inside both mylar bags, was a clear, vacuum sealed, food-saver style plastic bag which contained suspected marijuana. The weight of first bag of suspected marijuana was 491 grams. The weight of the second bag of suspected marijuana was 73 grams. The combined weight of the marijuana, including the plastic bag, was determined to be 564 grams.

31. On January 19, 2019, DANKSTIX was banned from the Dream Market place.

32. On January 22, 2019, law enforcement executed a federal search warrant (2:19-SW-0047-EFB) at the SPEROPOULOS and CROWE residence located at **343 Sawtell Road, Roseville, CA 95678**. Additionally, federal search warrants (2:19-SW-0048-EFB and 2:19-SW-0049-EFB) for associated vehicles of the occupants of the residence were executed. Law enforcement seized 8,646 grams of processed marijuana, 1,753 grams of

concentrated marijuana, 14 grams of psilocybin mushrooms, 4 grams of LSD and $39,643.00 in US currency. During the execution of the federal search warrants law enforcement observed and photographed numerous items that based upon their training and experience were indicative of narcotics trafficking. Both SPEROPOULOS and CROWE were arrested via federal complaint 2:19-MJ-00019-EFB for the following charges:

    a. Manufacturing and distributing controlled substances.
        i. Under 21 U.S.C. § 841(a)(1), "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

    b. Conspiring to manufacture and distribute controlled substances.
        i. Under 21 U.S.C. § 846, "any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

## Statement of Probable Cause

### C.  Parcel Identification

33. On January 29, 2019, law enforcement conducted an examination of outgoing Priority Mail parcels at the USPS Processing and Distribution Center, located in West Sacramento, California. During a visual and physical examination of **THE PARCEL**, law enforcement noticed several anomalies that, in their training and experience, are characteristics of parcels containing controlled substances and proceeds of narcotics trafficking.

34. Based on my training and experience, I am aware and I submit that the state of California, including the city of Roseville, is a source for illegal narcotics shipments; that the state of Illinois is a destination for illegal narcotics shipments from Northern California; and that proceeds from these illegal narcotic shipments are often mailed back to the state of California.

35. **THE PARCEL** was sent by Priority Mail. Priority Mail parcels are assigned a tracking number that allows the sender, recipient, or anyone else with the tracking number to identify the parcel's location in the mail stream at any point from mailing to delivery.

36. **THE PARCEL** was observed to be heavily taped along all the seams, which is a common tactic employed by persons who traffic narcotics. Based on my training and experience and the training and experience of law enforcement officers with whom I have consulted, I know this tactic is used to attempt to mask the odor of narcotics or contaminated narcotics proceeds emanating from the parcel.

37. During the records checks, law enforcement determined that the person who shipped **THE PARCEL**, conducted the transaction in cash. Based on my training and experience and the training and experience of other law enforcement officers with whom I have consulted, I know persons who traffic narcotics and narcotics proceeds through the US Mail often pay in cash as a way to remain anonymous to law enforcement.

38. A search for the return address for **THE PARCEL**, "Kristen Martin 343 Sawtell Rd. Roseville, CA 95678" was conducted, using Thomson Reuters CLEAR, an online public and proprietary records database used by law enforcement and government agencies to verify names and addresses. That search confirmed this is a real address; however "Kristen Martin" does not associate to this address. As previously noted, 343 Sawtell Road Roseville, CA 95678 is the residence of SPEROPOULOS and CROWE. Based on my training and experience and the training and experience of other law enforcement officers with whom I have consulted, I know persons who traffic narcotics and proceeds through the US Mail often provide fictitious names and/or addresses to remain anonymous to law enforcement.

39. A search for the recipient address for **THE PARCEL**, "Kiana Parsons 1643 S. Throop St. Apt 2F Chicago, IL 60608" was conducted again using CLEAR. That search confirmed this is a real address; however "Kiana Parsons" does not associate to this address. Based on my training and experience and the training and experience of other law enforcement officers with whom I have consulted, I know persons who traffic narcotics and proceeds through the US Mail often provide fictitious names and/or addresses to remain anonymous to law enforcement.

D. **Narcotic Detection Canine Sniff**

40. On January 30, 2019, Special Agent Jason Westgate assigned to the Tri-County Drug Enforcement Team (TRIDENT) utilized his narcotic-detection trained canine named "Maddie" to sniff **THE PARCEL**. At the time, **THE PARCEL** was located at the TRIDENT office in Roseville, CA. Prior to conducting the sniff of **THE PARCEL**, the area where Maddie was to conduct the test was proofed by SA Westgate. K9 Maddie did not give a positive alert to the presence of an odor of narcotics in the area.

8

41. **THE PARCEL** was placed among other office equipment and parcels. At approximately 11:48 a.m., SA Westgate and Maddie conducted a search of the area and Maddie positively alerted to the presence of a narcotic odor emanating from **THE PARCEL.**

42. SA Westgate has been a police officer for approximately 21 years and has worked for the City of Rocklin Police Department for 17 years. SA Westgate is currently employed by the Rocklin Police Department and currently assigned to TRIDENT. TRIDENT is a High Intensity Drug Trafficking Area (HIDTA) Drug Task Force. SA Westgate is also currently working as a canine handler and has been working in that capacity for over 10 years. SA Westgate is working with his second canine. SA Westgate's canine partner, Maddie, is a black Lab, P.O.S.T. certified in the detection of the odors for marijuana, methamphetamine, cocaine, and heroin. Maddie indicates by sitting, demeanor changes, scratching, biting, ripping, and/or intense sniffing.

43. SA Westgate and Maddie trained in the area of narcotic detection under the instruction of Retired Deputy Sheriff John Riboni of the Los Angeles County Sheriff's Department. Mr. Riboni has 13 years of experience in Police Canine Training, over 35 years of experience with Police K-9's, is a Post K-9 Certifier and was formerly a Judge with the Western States Police Canine Association.

44. SA Westgate and Maddie received over 120 hours of specialized training from Mr. Riboni in the detection of marijuana, cocaine, heroin, and methamphetamine. Maddie was subsequently certified by Mr. Ron Goodpaster from Roseville Police Department on December 15, 2016 as being proficient in the detection of narcotic substances in high, low, and buried locations. Training is ongoing for Maddie and SA Westgate.

45. On February 14, 2018, Maddie and SA Westgate were re-certified as being proficient in the detection of narcotic substances in high and low locations by Mr. Dave Stallions from the Placer County District Attorney's Office.

46. Maddie's alert consists of physical and mental reactions, which include heightened emotional state, and pawing at the area or object she smells drug odor coming from.

47. Maddie and SA Westgate have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of odor, and the narcotic detection dog's inherently keen smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and the ventilation of the item or container.

9

48. The canine must also be "proofed" from numerous odors including food, plastic bags and wrap, tape, and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert. Maddie has also been proofed from circulated and non-circulated U.S. currency.

49. As of February 2018, Maddie has alerted on no less than 200 different FedEx parcels / United States Mail parcels. These parcels were later opened through search warrants, consent, or were deemed abandoned property. All were found to further contain narcotics, U.S. currency, or the proceeds of narcotics trafficking.

50. To date Special Agents have recovered over $2,900,000 in U.S. currency, over 45 pounds of methamphetamine, and over 12 pounds of marijuana from Maddie's alerts.

51. Therefore, it is the opinion of SA Westgate that based on Maddie's positive alert, **THE PARCEL** contain drugs, paraphernalia or currency that has been recently subjected or stored with one of the narcotics substances Maddie is training to detect and is thus contaminated. This odor, in residual form (billionths of gram), is present on everyday circulation but not in the amount Maddie has been trained to detect.

### E.     Methods and Means of Using the United States Mail

52. Based on my experience, training, and discussions with other law enforcement officers experienced in drug investigations, I know that certain indicators exist when persons use the United States Mail to ship controlled substances from one location to another. Indicators for parcels that contain controlled substances and/or proceeds from controlled substances include, but are not limited to, the following:

   a. It is common practice for shippers of the controlled substances to use Express Mail and Priority Mail because the drugs arrive at the destination more quickly and on a predictable date. Express Mail and Priority Mail, when paired with a special service such as delivery confirmation, allow traffickers to monitor the progress of the shipment of controlled substances. Traffickers pay for the benefit of being able to confirm the delivery of the parcel by checking the Postal Service Internet website and/or calling the local post office.

   b. Packages containing controlled substances or proceeds have, in many instances, a fictitious return address, incomplete return address, no return address, a return address that is the same as the addressee address, or a return address that does not match the place from which the parcel was mailed. These packages are also sometimes addressed to or from a commercial mail receiving agency (*e.g.*, Mail

Boxes Etc.). A shipper may also mail the parcel containing controlled substances from an area different from the return address on the parcel because: (1) the return address is fictitious or (2) the shipper is attempting to conceal the actual location from which the parcel was mailed. These practices are used by narcotics traffickers to hide from law enforcement officials the true identity of the persons shipping and/or receiving the controlled substances or proceeds.

c. Individuals involved in the trafficking of controlled substances through the United States Mail will send and receive Express or Priority mailings on a more frequent basis than a normal postal customer. Drug traffickers use Express Mail and Priority Mail at a higher rate due to their frequent exchanges of controlled substances and the proceeds from the sale of these controlled substances.

d. In order to conceal the distinctive smell of controlled substances from narcotics detection dogs, these packages tend to be wrapped excessively in bubble-pack and wrapping plastic, and are sometimes sealed with the use of tape around all seams. In addition, the parcels often contain other smaller parcels which are carefully sealed to prevent the escape of odors. Perfumes, coffee, dryer sheets, tobacco, or other substances with strong odors are also sometimes used to mask the odor of the controlled substances being shipped. Drug traffickers often use heat/vacuum sealed plastic bags, and/or re-sealed cans in an attempt to prevent the escape of orders.

e. California is typically a source state for drugs, especially marijuana. It is common for individuals in California to mail parcels containing narcotics to other states and then receive mail parcels containing cash payments in return.

53. Based on my training and experience, I know that parcels shipped by drug traffickers sometimes contain information and documentation related to the sales and distribution of controlled substances. The documentation can include, but is not limited to, information and instructions on the breakdown and distribution of the controlled substances at the destination; information on the use and effects of the various controlled substances; information about the actual sender; pay/owe sheets; and information and instructions for ordering future controlled substances.

54. Drug traffickers who use the United States Mail and other carriers as a means of distributing controlled substances, paraphernalia, and proceeds, and as a means of communicating with co-conspirators often include the following in parcels relating to their trafficking activity, all of which are evidence, fruits, proceeds, and/or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846:

a. Controlled substances, including heroin, cocaine, methamphetamine, and marijuana.

b. Packaging, baggies, and cutting agents, including items used to conceal the odor of narcotics, such as perfumes, coffee, dryer sheets, tobacco, or other substances with a strong odor.

c. Records reflecting the mailing or receipt of packages through Express Mail, Priority Mail, Federal Express, UPS or any other common carrier.

d. United States and foreign currency, securities, precious metals, jewelry, stocks, bonds, in amounts exceeding $500, including financial records related to the laundering of illicitly obtained monies and/or other forms of assets, including United States currency acquired through the sales, trafficking, or distribution of controlled substances.

e. Records reflecting or relating to the transporting, ordering, purchasing, and/or distribution of controlled substances, including but not limited to books, receipts, notes, ledgers, pay and owe sheets, correspondence, records noting price, quantity, date and/or times when controlled substances were purchased, possessed, transferred, distributed, sold or concealed.

f. Records reflecting or relating to co-conspirators, including but not limited to personal notes, correspondence, cables, telegrams, personal address lists, listings of telephone numbers, and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates and conspirators in controlled substance trafficking activities.

g. Indicia or other forms of evidence showing dominion and control, or ownership of mail parcels, locations, vehicles, storage areas, safes, lock boxes, and/or containers related to the storage of controlled substances or proceeds.

///

## Conclusion

55. Based on the facts set forth in this Affidavit, I believe there is probable cause that evidence, fruits, proceeds, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846 are concealed in **THE PARCEL**. Accordingly, I respectfully request the issuance of a search warrant authorizing the search of **THE PARCEL** described in the Attachment A and the seizure of the items described in Attachment B.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

Trevor R. Covert
United States Postal Inspector

Sworn and Subscribed to me on February 01, 2019

The Honorable Kendall J. Newman
United States Magistrate Judge

Approved as to form:

Grant Rabenn
Assistant U.S. Attorney

13

## ATTACHMENT A

### *Description of the Parcel to be Searched*

One Priority Mail Parcel measuring approximately 24.50" x 20" x 15" and weighing approximately 41 lbs. 9.8 ounces affixed with tracking number 9505 5152 6776 9029 4819 42. **THE PARCEL** is addressed to "Kiana Parsons 1643 S. Throop St. Apt 2F Chicago, IL 60608" with a return address of "Kristen Martin 343 Sawtell Rd. Roseville, CA 95678". **THE PARCEL** bears a postage strip with meter number 0565820677-13 in the amount of $94.05 mailed from ZIP Code 95677 on Jan 29, 2019, located in the upper right hand corner of **THE PARCEL**.

**THE PARCEL** is currently in my possession in the Eastern District of California.

## **ATTACHMENT B**

### *List of Items to be Seized*

The following items constitute evidence, fruits, proceeds, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846.

1. Controlled substances of any kind, including but not limited to heroin, cocaine, methamphetamine, and/or marijuana.

2. Packing, packaging, baggies, and cutting agents, including items used to conceal the odor of narcotics, such as perfumes, coffee, dryer sheets, tobacco, or other substances with a strong odor.

3. Any and all records reflecting the sending or receiving of packages through Express Mail, Priority Mail, Federal Express, UPS, or any other common carrier.

4. United States and foreign currency, securities, precious metals, jewelry, stocks, bonds, in amounts exceeding $500, including any and all financial records to facilitate the investigation of the laundering of illicitly obtained monies and/or other forms of assets, including United States currency acquired through the sales, trafficking, or distribution of controlled substances.

5. Records reflecting or relating to the transporting, ordering, purchasing, and/or distribution of controlled substances, including but not limited to books, receipts, notes, ledgers, pay and owe sheets, correspondence, records noting price, quantity, date and/or times when controlled substances were purchased, possessed, transferred, distributed, sold or concealed.

6. Records reflecting or relating to co-conspirators, including but not limited to personal notes, correspondence, cables, telegrams, personal address lists, listings of telephone numbers, and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates and conspirators in controlled substance trafficking activities.

7. Indicia or other forms of evidence showing dominion and control, or ownership of mail parcels, locations, vehicles, storage areas, safes, lock boxes, and/or containers related to the storage of controlled substances or proceeds.

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) <br> ) <br> USPS Priority Mail Parcel affixed with tracking number 9505 ) <br> 5152 6776 9029 4819 42 addressed to "Kiana Parsons 1643 S. ) <br> Throop St. Apt 2F Chicago, IL 60608" with a return address of ) <br> "Kristen Martin 343 Sawtell Rd. Roseville, CA 95678". ) <br> ) | Case No. 2:19-SW-0076 KJN |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     California
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before     February 15, 2019     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  1:40 p.m. Feb 1, 2019             _____
                                                                  Judge's signature

City and state:     Sacramento, California             Kendall J. Newman, U.S. Magistrate Judge
                                                         *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

_____            _____
Signature of Judge                                                Date

# ATTACHMENT A

## *Description of the Parcel to be Searched*

One Priority Mail Parcel measuring approximately 24.50" x 20" x 15" and weighing approximately 41 lbs. 9.8 ounces affixed with tracking number 9505 5152 6776 9029 4819 42. **THE PARCEL** is addressed to "Kiana Parsons 1643 S. Throop St. Apt 2F Chicago, IL 60608" with a return address of "Kristen Martin 343 Sawtell Rd. Roseville, CA 95678". **THE PARCEL** bears a postage strip with meter number 0565820677-13 in the amount of $94.05 mailed from ZIP Code 95677 on Jan 29, 2019, located in the upper right hand corner of **THE PARCEL.**

**THE PARCEL** is currently in my possession in the Eastern District of California.

14

## ATTACHMENT B

### *List of Items to be Seized*

The following items constitute evidence, fruits, proceeds, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846.

1. Controlled substances of any kind, including but not limited to heroin, cocaine, methamphetamine, and/or marijuana.

2. Packing, packaging, baggies, and cutting agents, including items used to conceal the odor of narcotics, such as perfumes, coffee, dryer sheets, tobacco, or other substances with a strong odor.

3. Any and all records reflecting the sending or receiving of packages through Express Mail, Priority Mail, Federal Express, UPS, or any other common carrier.

4. United States and foreign currency, securities, precious metals, jewelry, stocks, bonds, in amounts exceeding $500, including any and all financial records to facilitate the investigation of the laundering of illicitly obtained monies and/or other forms of assets, including United States currency acquired through the sales, trafficking, or distribution of controlled substances.

5. Records reflecting or relating to the transporting, ordering, purchasing, and/or distribution of controlled substances, including but not limited to books, receipts, notes, ledgers, pay and owe sheets, correspondence, records noting price, quantity, date and/or times when controlled substances were purchased, possessed, transferred, distributed, sold or concealed.

6. Records reflecting or relating to co-conspirators, including but not limited to personal notes, correspondence, cables, telegrams, personal address lists, listings of telephone numbers, and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates and conspirators in controlled substance trafficking activities.

7. Indicia or other forms of evidence showing dominion and control, or ownership of mail parcels, locations, vehicles, storage areas, safes, lock boxes, and/or containers related to the storage of controlled substances or proceeds.